**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
|     Plaintiff, | : Civil Action No. 23-cv-2029 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| OAK STREET HEALTH, INC., MIKE | : **SECURITIES EXCHANGE ACT OF** |
| PYKOSZ, GEOFF PRICE, GRIFFIN | : **1934** |
| MYERS, M.D., ROBB VORHOFF, SRDJAN | : |
| VUKOVIC, PAUL KUSSEROW, KIM | : **JURY TRIAL DEMANDED** |
| KECK, CHERYL DORSEY, M.D., JULIE | : |
| KLAPSTEIN, MOHIT KAUSHAL, REGINA | : |
| BENJAMIN, M.D., | : |
| | : |
|     Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Oak Street Health, Inc. ("Oak Street Health or the "Company") and the members Oak Street Health's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Oak Street Health by affiliates of CVS Health Corporation ("CVS Health").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on March 8, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Halo Merger Sub Corp. ("Merger Sub"), a wholly owned direct subsidiary of CVS Pharmacy, Inc. ("CVS Pharmacy") will merge with and into Oak Street Health with Oak Street Health becoming a wholly owned subsidiary of CVS Pharmacy (the "Proposed Transaction"). The Proxy Statement refers to CVS Health and CVS Pharmacy and Merger Sub collectively as "CVS Health." Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 7, 2023 (the "Merger Agreement"), each Oak Street Health stockholder will receive $39.00 in cash (the "Merger Consideration") for each Oak Street Health share owned.

3. As discussed below, Defendants have asked Oak Street Health's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Centerview Partners LLC, in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Oak Street Health's stockholders or, in the

event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Oak Street Health stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Mike Pykosz has served as a member of the Board since 2012 and is the Company's Chief Executive Officer and Chairman of the Board.

11. Individual Defendant Geoff Price has served as a member of the Board since 2012 and is the Company's Chief Innovation Officer.

12. Individual Defendant Griffin Myers, M.D. has served as a member of the Board since 2012 and is the Company's Chief Medical Officer of Provider Engagement.

13. Individual Defendant Robb Vorhoff has served as a member of the Board since 2015 and is the Lead Director.

14. Individual Defendant Srdjan Vukovic has served as a member of the Board since 2015.

15. Individual Defendant Paul Kusserow has served as a member of the Board since 2018.

16. Individual Defendant Kim Keck has served as a member of the Board since 2020.

17. Individual Defendant Cheryl Dorsey, M.D. has served as a member of the Board since 2020.

18. Individual Defendant Julie Klapstein has served as a member of the Board since 2020.

19. Individual Defendant Mohit Kaushal has served as a member of the Board since 2018.

20. Individual Defendant Regina Benjamin, M.D. has served as a member of the Board since 2020.

21. Defendant Oak Street Health is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 30 W. Monroe Street, Suite 1200, Chicago, Illinois 60603. The Company's stock trades on the New York Stock Exchange under the symbol "OSH."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. <u>**The Proposed Transaction**</u>

24. Oak Street Health, Inc., together with its subsidiaries, provides healthcare services to the patients in the United States. It operates primary care centers for Medicare beneficiaries in Illinois, Michigan, Pennsylvania, Ohio, and Texas. The company was founded in 2012 and is headquartered in Chicago, Illinois.

25. On February 8, 2023, the Company announced the Proposed Transaction:

> WOONSOCKET, R.I. and CHICAGO, Feb. 8, 2023 /PRNewswire/ -- CVS Health® (NYSE: <u>CVS</u>) and Oak Street Health (NYSE: <u>OSH</u>) have entered into a definitive agreement under which CVS Health will acquire Oak Street Health in an all-cash transaction at $39 per share, representing an enterprise value of approximately $10.6 billion.
>
> Oak Street Health is a leading multi-payor, value-based primary care company helping older adults stay healthy and live life more fully. With an innovative care model and technology platform designed to deliver consistently superior outcomes and patient experiences, Oak Street Health has demonstrated that its model is scalable.
>
> Bringing CVS Health and Oak Street Health together can significantly benefit patients' long-term health by reducing care costs and improving outcomes – particularly for those in underserved communities. Oak Street Health centers are located where health care services are needed most; more than 50 percent of Oak Street Health's patients have a housing, food or isolation risk factor.
>
> "Combining Oak Street Health's platform with CVS Health's unmatched reach will create the premier value-based primary care solution," said CVS Health President and CEO Karen S. Lynch. "Enhancing our value-based offerings is core to our strategy as we continue to redefine how people access and experience care that is more affordable, convenient and connected."
>
> Oak Street Health employs approximately 600 primary care providers and has 169 medical centers across 21 states. Oak Street Health is differentiated by its leading technology solution, Canopy, which is fully integrated with Oak Street Health's operations and utilized when determining the appropriate type and level of care for

each patient. That care will be enhanced by CVS Health's community, home and digital offerings.

"This agreement with CVS Health will accelerate our ability to deliver on our mission and continue improving health outcomes, lowering medical costs, and providing a better patient experience while offering significant value to our shareholders," said Oak Street Health CEO Mike Pykosz. "Together with CVS Health, we will have access to greater resources and capabilities to expand the reach of our platform, provide more opportunities for our teammates and, most importantly, make a meaningful difference in the lives of the patients we serve."

Following the close of the transaction, Pykosz will continue to lead Oak Street Health, which will become part of CVS Health's recently formed Health Care Delivery organization. Oak Street Health will continue to serve its extensive network of health plan partners and patients – consistent with CVS Health's payor-agnostic approach to delivering leading solutions.

**Transaction details**

CVS Health will acquire Oak Street Health's outstanding shares for $39 per share in cash, representing an enterprise value of approximately $10.6 billion. CVS Health expects to fund the transaction through available resources and existing financing capacity and is committed to maintaining its current credit ratings. The transaction was approved by the Board of Directors at each of the respective companies and is subject to approval by a majority of Oak Street Health's stockholders, receipt of regulatory approval and satisfaction of other customary closing conditions. Private equity funds affiliated with Newlight Partners LP and General Atlantic LLC and certain members of the Oak Street Health Board of Directors, which collectively own approximately 45% of the common stock of Oak Street Health, have agreed to vote the shares they own in favor of the transaction, subject to customary exceptions. CVS Health and Oak Street Health anticipate that the transaction will close in 2023.

"Oak Street Health is a premier value-based primary care platform," said CVS Health Chief Financial Officer Shawn M. Guertin. "We believe that in partnership with CVS Health, Oak Street Health can accelerate its growth and provide an attractive return to our shareholders over time. The pending acquisitions of Oak Street Health and Signify Health will also meaningfully advance our goal of adding 200 basis points of long-term adjusted operating income

growth, a key commitment we made to shareholders at our December 2021 Investor Day."

By 2026, Oak Street Health will have over 300 centers, each of which has the potential to contribute $7 million of Oak Street Health Adjusted EBITDA at maturity, representing more than $2 billion of Oak Street Health embedded Adjusted EBITDA at that time. Additionally, CVS Health projects more than $500 million in synergy potential over time, enhancing CVS Health's long-term adjusted operating income growth.

CVS Health continues to project that it will achieve 2023 Adjusted EPS in the range of $8.70 to $8.90. CVS Health is now targeting 2024 Adjusted EPS of approximately $9.00, growing to approximately $10.00 in 2025, with upside in 2025 based on the successful resolution of its Medicare Stars Ratings mitigation efforts. The 2024 and 2025 Adjusted EPS trajectories reflect the impact of the previously disclosed 2024 Medicare Stars Ratings headwind and Centene contract loss, closing of the Oak Street Health transaction in 2023, as well as projected contributions from the pending Signify Health transaction in 2024 and beyond. Consistent with past practice, CVS Health expects to exclude integration and transaction costs from its Adjusted EPS presentation.

**Advisors**

Credit Suisse Securities (USA) LLC and Lazard Ltd are serving as co-financial advisors to CVS Health. CVS Health was advised on legal matters by Shearman & Sterling LLP, Dechert LLP and McDermott Will & Emery. Centerview Partners is serving as financial advisor for Oak Street Health and Kirkland & Ellis LLP is acting as Oak Street Health's legal advisor.

\* \* \*

26. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Oak Street Health's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.     **The Materially Incomplete and Misleading Proxy Statement**

27.    On March 8, 2023, Oak Street Health filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

28.    The Proxy Statement fails to provide material information concerning financial projections by Oak Street Health management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Oak Street Health management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Platform Contribution, Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

32. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

33. With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each company selected by Centerview for the analysis; and (ii) the inputs and assumptions underlying the reference range of enterprise value to projected revenue multiples of 1.8x to 2.2x.

34. With respect to Centerview's *Selected Transaction Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each transaction selected by Centerview for the analysis; and (ii) the inputs and assumptions underlying the reference range of enterprise value to last 12-month Revenue multiples of 3.0x to 5.0x.

35. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 11.25% to 13.50%; (ii) the weighted cost of capital of the Company; (iii) the extrapolated unlevered free cash flows of the Company for the period beginning the first quarter of 2029 and ending in December 2037; (iv) the forecasted use of federal and state net operating loss carryforwards through 2032; (v) the implied terminal value of Oak Street Health at the end of the forecast period; (vi) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 2.5% to 3.5%; (vii) Oak Street Health's estimated net debt as of December 31, 2022; and (viii) the number of fully-diluted outstanding shares of Oak Street Health common stock calculated as of February 3, 2023.

36. With respect to Centerview's *Illustrative Discounted Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) projected net debt of the Company; (ii) the inputs and assumptions underlying the discount rate of 13.5%; (iii) the inputs and assumptions underlying the selection of the one-year forward revenue multiple of 2.0x.

37. With respect to Centerview's *Analyst Price Target Range Analysis* the Proxy Statement fails to disclose: (i) the Wall Street research analysts observed; and (ii) the stock price targets published by each Wall Street research analysts.

38. With respect to Centerview's *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions reviewed by Centerview; (ii) the Reference Date of each transaction; (iii) the closing stock price of the target company as of the Reference Date of each transaction; and (iv) the premiums paid in each transaction.

39. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do

carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

45. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Oak Street Health within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Oak Street Health, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Oak Street Health, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Oak Street Health, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

50. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 9, 2023                               **MELWANI & CHAN LLP**

                                                   By:  */s/ Gloria Kui Melwani*
                                                        Gloria Kui Melwani (GM5661)
                                                        1180 Avenue of the Americas, 8th Fl.
                                                        New York, NY 10036
                                                        Telephone: (212) 382-4620
                                                        Email: gloria@melwanichan.com

                                                        *Attorneys for Plaintiff*